IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY　) <br> INSURANCE CO.,　　　　　) <br> 　　　　　　　　　　　　) <br> 　　　Plaintiff,　　　　) <br> 　　　　　　　　　　　　) <br> v.　　　　　　　　　　　) <br> 　　　　　　　　　　　　) <br> BMC CONTRACTORS, INC.;　) <br> TRITT ENTERPRISES, INC.;　) <br> ROBERTSON-CECO II CORP.;　) <br> HEFCO CONSTRUCTION, INC.; and ) <br> DORIS D. HEFNER;　　　　) <br> 　　　　　　　　　　　　) <br> 　　　Defendants.　　　　) <br> _____) | Civil Action No. 5:06-cv-186 (CAR) |

*ORDER ON STAR'S MOTION FOR DEFAULT JUDGMENT AND*
*BMC'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION*

Before the Court are Defendant/Cross-Plaintiff Star Building Systems, a division of Robertson-Ceco II Corporation's ("Star") Motion for Default Judgment Against BMC Contractors, Inc. [Doc 10]; and Cross-Defendant BMC Contractors, Inc.'s ("BMC") Motion for Leave to File Responsive Pleading to Star's Cross-Claims and Motion to Set Aside Entry of Default [Doc. 118]; and BMC's Motion to Stay the Proceedings and Compel Arbitration [Doc. 143]. For the reasons stated below, Star's Motion for default judgment [Doc. 10] is **DENIED**; BMC's Motion to file a responsive pleading to Star's cross-claims and to set aside entry of default [Doc. 118] is **GRANTED**; and BMC's Motion to Stay the Proceedings and Compel Arbitration [Doc. 143] is **GRANTED**.

**BACKGROUND**

1

This action commenced on June 2, 2006,[1] when Plaintiff International Fidelity Insurance Company ("IFIC") filed its Complaint against seven different defendants seeking damages for breach of contract and negligence claims arising from the defendants' alleged default under their respective construction contracts. Both Star and BMC are named Defendants in the Complaint.

The Georgia Department of Juvenile Justice ("Owner") entered into a construction contract with defendant Hefco Construction, Inc. ("General Contractor") to build a youth detention center warehouse in Macon, Georgia.  IFIC, a commercial surety, issued performance and payment bonds for the project.  The General Contractor engaged other sub-contractors, including Defendant BMC, to perform certain labor for the project.  The General Contractor entered into a contract BMC in which BMC agreed to design, fabricate, and erect a pre-engineered metal building.  BMC, in turn, entered into a sub-contract with Star, a manufacturer of pre-engineered buildings, in which Star agreed to manufacture and deliver the pre-engineered and fabricated metal building.  The sub-contract contains an arbitration provision.

On August 8, 2005, IFIC received written notice from the Owner declaring the General Contractor in default for, among other things, abandoning the contract, failing to properly perform and supervise the work, and failing to pay subcontractors as required.  Thus, the Owner terminated the contract with the General Contractor and demanded that IFIC as surety perform under the bonds.  Accordingly, IFIC completed the project, and filed its Complaint against Defendants.  Specifically as to Star and BMC, IFIC contends that Star breached its agreement to design, fabricate, and deliver an acceptable pre-engineered metal building, and BMC's conduct

---

[1] This case has involved multiple time delays due to various stays resulting from arbitration and withdrawal of attorneys, and administrative issues in the Court's electronic docket system.

constitutes negligence.[2]

On August 11, 2006, Star filed a counterclaim against IFIC and cross-claims against BMC and the General Contractor. As to BMC, Star filed cross-claims for breach of contract and indemnity, asserting that Star manufactured and delivered the metal building in conformance with its contract with BMC, that BMC failed to pay Star the amounts due, and that to the extent Star is responsible to Plaintiff IFIC, BMC is responsible to Star. BMC, represented at that time by attorney William G. Fallin, did not timely answer or file any other defensive pleadings in response to Star's cross-claims. On January 11, 2007, Attorney Fallin withdrew from representing BMC, and the case was stayed for thirty (30) days for BMC to secure new counsel. BMC secured new counsel who entered an appearance on March 27, 2007.

Because BMC did not file a responsive pleading to Star's cross-claims, on May 4, 2007, Star moved for entry of default and default judgment against BMC, and on that same date, the Clerk entered default against BMC. Approximately two weeks later, on May 21, 2007, BMC, through new counsel, moved for leave to file a responsive pleading to Star's cross-claims and to set aside the Clerk's Entry of Default. BMC attached to the Motion its proposed answer to Star's cross-claims. BMC President and CEO Cecil Ray Bryant avers that BMC was never informed that Star had filed cross-claims against BMC and was unaware of the existence of the claims until after it retained its current counsel. Moreover, Bryant states that he had been in continuous contact with Star representatives who repeatedly informed him that BMC should not be concerned with Star's allegations of monies owed to it from BMC. Approximately five months

---

[2] The Court notes that IFIC's claims against BMC have been resolved through arbitration. IFIC's claims against Star remain pending.

after the Clerk's entry of default against BMC, on October 14, 2007, BMC moved to stay the proceedings and compel arbitration pursuant to the arbitration provision in the sub-contract between BMC and Star.

## DISCUSSION

**Default**

Rule 55 of the Federal Rules of Civil Procedure permits a court to set aside an entry of default "[f]or good cause shown." Fed. R. Civ. P. 55(c).[3] "Good cause is a mutable standard, varying from situation to situation. It is also a liberal one – but not so elastic to be devoid of substance. [The Eleventh Circuit Court of Appeals] recognize[s] that good cause is not susceptible to a precise formula, but some general guidelines are commonly applied." Compania Interamericana Export-import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996) (internal citations omitted). In determining whether to set aside a default, courts may consider (1) "whether the default was culpable or willful"; (2) "whether setting it aside would prejudice the adversary"; (3) "whether the defaulting party presents a meritorious defense"; (4) "whether the public interest was implicated"; and (5) "whether the defaulting party acted promptly to correct the default." Id. "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. at 951-52. The decision to enter a default judgment

---

[3] Rule 55(c) also permits a court to set aside a default *judgment* "in accordance with Rule 60(b)," which permits a court to relieve a party from a final judgment if it finds "excusable neglect." "The excusable neglect standard that courts apply in setting aside a default *judgment* is more rigorous that the good cause standard that is utilized in setting aside an *entry of default*." E.E.O.C. v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990) (internal citations omitted) (emphasis added). Default judgment has not been entered in this case, and thus the proper standard to evaluate Star's Motion is the "good cause" standard.

"is discretionary.... Entry of judgment by default is a drastic remedy which should be used only in extreme situations.... [T]he usual preference [is] that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985). Thus, any doubt as to whether a default should be granted or vacated "should be resolved in favor of a judicial decision on the merits of a case[.]" Blois v. Friday, 612 F.2d 938, 940 (5th Cir. 1980).[4]

Having considered the facts as found in this case, the Court finds that BMC has shown good cause to set aside the default entered against them, and the exceptional circumstances that would justify entry of default judgment for Star are not present in this case. First, there is no evidence that BMC's failure to respond to Star's cross-claims was willful, but rather was the result of an erroneous belief that its former attorney had responded to the cross-claims. BMC maintains that it knew neither about the existence of the cross-claims nor its failure to respond to the cross-claims, until after it secured its new counsel and entry of default was entered on May 4, 2007. On August 1, 2006, when Star filed and served its cross-claims, BMC was represented by William Fallin. C. Ray Bryant, the president of BMC, avers that Star served its cross-claim on Mr. Fallin, and Fallin never informed BMC of the cross-claim. BMC was under the impression Mr. Fallin was acting in its best interest until he withdrew as BMC's counsel on January 11, 2007. The case was then stayed to allow BMC to secure new counsel, which it obtained on March 27, 2007. Approximately one month after retaining new counsel, Star filed its Motion to enter default and default judgment, and approximately two weeks later BMC, represented by new

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981 (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

counsel, filed its Motion to set aside the default.

Second, any amount of prejudice to Star in setting aside the default is outweighed by the other factors. Although discovery in this case ended on April 14, 2007, many of the original claims, cross-claims, and counter-claims remain pending. Moreover, this case has been replete with various time delays due to arbitrations, the withdrawal of attorneys, and the Court's own administrative issues. Furthermore, there are defendants who still have not filed responses to other claims and cross-claims. BMC asserts meritorious defenses to the cross-claims filed and acted quickly to set aside the default, approximately two weeks after it was entered. It would be unfair to punish BMC for the mistakes of its former attorney. In light of these circumstances and the usual preference that cases be heard on the merits, the Court finds default judgment inappropriate in this case.

**Compel Arbitration**

On October 14, 2007, approximately five months after BMC knew of its default in this case, BMC filed its Motion to stay the proceedings and compel arbitration. Star contends that the Court cannot compel arbitration because BMC has waived its right to arbitrate.

The Supreme Court has commanded that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). Despite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration. See Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." Morewitz v. West of Engl. Ship

Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1366 (11th Cir. 1995); see also Ivax Corp., 286 F.3d at 1315-16 (A party has waived its right to arbitrate (1) if "under the totality of circumstances the party has acted inconsistently with the arbitration," and (2) "whether, by doing so, that party has in some way prejudiced the other party." ) (citing S&H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (internal quotation marks omitted). "When determining whether the other party has been prejudiced, [the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." S&H Contractors, 906 F.2d at 1514.

Applying the factors in this case, the Court finds that BMC has not waived its right to arbitrate. BMC has not "substantially participate[d]" in the litigation on Star's cross-claims "to a point inconsistent with an intent to arbitrate." Morewitz, 62 F.3d at 1366. Indeed, the president of BMC avers that he was unaware of the cross claims until some time after its new counsel was secured, and Star had filed its motion for entry of default and default judgment. (Bryant Aff. ¶ 8, Doc. 117). Thus, BMC did not participate in any discovery as it was unaware of the cross-claims until after the close of discovery. Moreover, BMC's president avers that he had been in contact with Star representatives throughout the lawsuit who never mentioned the cross-claims and told him to not worry about the bills Star was sending because Star was going to sell the building and BMC would not owe anything to Star. (Bryant Aff. ¶¶ 10 -12, Doc. 117). Based on Star's representations, BMC believed that it did not need to be concerned with Star. Id. Therefore, BMC did not know to file any demand for arbitration. As previously found, once BMC learned of its default, it acted quickly to set aside the default. This Court did not rule on BMC's Motion to set aside the default, nor did any action take place before BMC filed its demand for arbitration.

Considering the various time delays in this case, together with the fact that no discovery has been conducted on Star's cross-claim, the Court finds BMC's demand for arbitration to be made within a reasonable time.  BMC's conduct does not rise to the level of waiver. Compare  Morewitz, 62 F.3d at 1365-66 (insurer waived its right to arbitrate a dispute with an injured third party because it had participated and defended its interests in an earlier lawsuit and had colluded substantially with its insured to the detriment of the third party); S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990) (plaintiff waived right to arbitrate where it waited eight months from the time its filed its complaint to the time it demanded arbitration, and defendant was prejudiced by the delay because it had filed a motion to dismiss and an opposition to plaintiff's motion for discovery, and plaintiff had taken the depositions of five of defendant's employees before filing its demand to arbitrate).

     Moreover, the Court finds that any prejudice to Star is outweighed by the Court's finding that BMC demanded arbitration in a reasonable time together with the strong policy in favor of arbitration.  "Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz, 62 F.3d at 1366.  Indeed, Star has incurred some litigation expenses, including expenses for preparing and filing its motion for entry of default and default judgment, and preparing and filing its opposition to BMC's motion to set aside the default.  However, as this Court has previously found, it was not until BMC was represented by new counsel and after Star filed its Motion for entry of default and default judgment, that BMC learned of the need to file such motions.  Indeed, BMC had to file the motions in order to demand arbitration.  Star also points out that BMC did not seek arbitration until after discovery closed, but, again, BMC did not

know of the cross-claims, its default, and hence the need to demand arbitration, until after discovery closed.

Having found that BMC has not waived its right to arbitrate the claims, the Court now turns to BMC's demand to compel arbitration on Star's cross-claims. Arbitration provisions in contracts are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Under the FAA, arbitration agreements are to be placed on the same footing as other contracts and doubts concerning the arbitrability of a matter are to be resolved in favor of arbitration. See EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). Pursuant to the Terms and Condition of BMC's sub-contract with Star, the parties agreed to arbitrate the types of claims at issue here. Under the agreement:

> All claims, disputes and matters in question arising out of or relating to this agreement or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

StarTrac Building Order, Terms and Conditions, Arbitration [Doc. 145-3]. The parties do not dispute that these claims are subject to the arbitration clause in the agreement. Rather, Star contends that BMC has violated the arbitration provision because it did not seek arbitration within a reasonable time. The arbitration clause continues stating that,

> [t]he demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

Id.  The Court finds that in light of the circumstances in this case as previously discussed, BMC has not violated this provision and made its demand for arbitration within a reasonable time. Thus, the Court will compel arbitration of Star's cross-claims against BMC.

## CONCLUSION

For the reasons set forth above, Star's Motion for Entry of Default and Default Judgment [Doc. 112] against BMC is **DENIED**; BMC's Motion to file a responsive pleading to Star's cross-claims and to set aside the entry of default [Doc. 118] is **GRANTED**; and BMC's Motion to Stay the Proceedings and Compel Arbitration [Doc. 143] is **GRANTED**.  BMC's proposed answer to Star's cross-claims filed as Attachment A to its Motion [Doc. 118-2] is hereby deemed filed as of the date hereof.

Also in accordance with reasons set forth above, the Court hereby **STAYS** the proceedings as it relates to Star's cross-claims against BMC and **ORDERS** Star and BMC to proceed to arbitration in accordance with the subcontract within **forty-five (45) days** of the date of this Order.  If the parties are unable to arrange arbitration within this time period, the parties are DIRECTED to contact the Court to explain the reasons why they are unable to arbitrate this matter within the time period and advise the Court of the date arbitration will occur.

**SO ORDERED**, this 14th day of July, 2009.

> S/ C. Ashley Royal
> C. ASHLEY ROYAL, JUDGE
> UNITED STATES DISTRICT COURT

SSH